# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ALASKA

Dayle James, as the Personal
Representative of the Estate of
Charlie Thomas James, Jr.,

        Plaintiff,

vs.

United States Department of Defense,
and U.S. Army,

        Defendants.

3:18-cv-00028 JWS

ORDER FROM CHAMBERS

[Motions at Docket 12 & 17]

## I. MOTIONS PRESENTED

Plaintiff moved for summary judgment at docket 12. Defendants United States Department of Defense and the U.S. Army (jointly "Defendant") filed an opposition and cross motion for summary judgement at docket 16. Defendant filed the same opposition and cross motion for summary judgement again at docket 17. Plaintiff filed a combined opposition/reply at docket 20. Defendant filed a reply at docket 21. Oral argument was not requested and would not aid the court.

## II. BACKGROUND

Charlie Thomas James, Jr. ("Charlie") was killed in an accident which happened on March 13, 2015, when an Army "Stryker" vehicle was being loaded onto a rail car and its brakes failed. Plaintiff brought this lawsuit seeking information pertinent to his wrongful death lawsuit, which is also pending in this court ("James Lawsuit").[1]   Only

---

[1] Case No. 3:17-cv-046 JWS.

one defendant remains in the James Lawsuit, General Dynamics Land Systems, Inc. ("General Dynamics"). Plaintiff's counsel has expressed his intent to join the United States as a defendant in the James Lawsuit,[2] but has not yet done so.

Plaintiff's counsel made a Freedom of Information Act ("FOIA") request to Defendant on March 7, 2017, which set out five specific questions.[3] The Army responded with answers to the questions on April 6, 2017.[4] On May 23, 2017, Plaintiff's attorney made a second FOIA request in which he asked the Army to provide "copies of any Army reports, memoranda or similar documents reflecting the results of any investigation into [Charlie's death] including any inspection and testing of the brakes on the subject Stryker and any investigation into the cause of the brake failure, and any persons or entities that might be responsible for the brake failure."[5] The Army responded on June 14, 2018, stating that the investigation had been conducted by OSHA, referred Plaintiff's lawyer to that organization, and said that the referral to OSHA was its final response.[6]

Having seen discovery responses from General Dynamics in the James Lawsuit, indicating that the Army had been involved in investigating the accident, Plaintiff's lawyer renewed his FOIA request on July 25, 2018, asking for "all documents concerning the inspection of the Stryker involved in [Charlie's] death, including all memos, emails, reports and similar documents regarding any inspection of the accident

---

[2] *Id.* at doc. 55.

[3] Doc. 12-1.

[4] Doc. 12-2.

[5] Doc. 12-3.

[6] Doc. 12-4.

vehicle both pre and post accident."[7]  The initial response was a letter advising that the request was being referred to the U.S. Army Pacific Command-U.S.Army Alaska.[8]

Hearing nothing further, Plaintiff's lawyer made a follow-up inquiry on January 2, 2018.[9]  Thereafter, on April 2, 2018, the Army responded by providing a redacted copy of its AR15-6 investigation report and redacted sworn statement from three soldiers. The response also advised that other documents were being withheld.  The response advised that the redactions and withholding of documents were done pursuant to the FOIA privacy exemption, 5 U.S.C. § 552 (b)(6) and the FOIA deliberative process exemption, 5 U.S.C. § 552 (b)(5).  Attached to the response was a log of withheld materials listing categories of materials withheld and references to the pertinent exemptions for each category.[10]  Copies of the redacted sworn statements are at docket 12-9.  A copy of the redacted AR15-6 report with attachments is found at docket12-10.

Plaintiff's attorney then asked for reconsideration of the decision to withhold information saying: "We need the names and last known addresses of the persons who gave statements and signed and created the documents.  Unless the [James Lawsuit] is settled we will have to take depositions of those personnel and thus require their names and last known addresses."[11]  With respect to the documents being withheld, Plaintiff's counsel asserted that to determine whether the invocation of the deliberative process exemption was appropriate, he needed more information.  In particular, he asked for the type of document and its date, and as to documents which were communications, the

---

[7]Doc. 12-5.

[8]Doc. 12-6

[9]Doc. 12-7.

[10]Doc. 12-8.

[11]Doc. 12-11.

"name, rank and title of the sender and recipient."[12] Plaintiff's lawyer also asked that if a privilege were claimed, that the specific privilege and specific facts supporting the privilege be disclosed.[13] The Army responded by denying the request for information identifying the various individuals pursuant to the privacy exemption and attaching another copy of the log of withheld materials.[14]

In connection with its response to Plaintiff's motion, Defendant indicated that it would produce portions of two email chains which were among the four documents originally withheld in their entirety. The first email chain "constituted communications between United States Army Alaska staff members concerning the Stryker vehicle and incident."[15] The redacted portions were "withheld because they contain personal recommendations of USARAK staff and are exempt under the provisions of FOIA."[16]

The second email chain consisted of communications between USARAK lawyers "concerning the Stryker vehicle, potential courses of action, and discussions in anticipation of litigation."[17] The redacted portions "are being withheld because they contain attorney-client communications and are exempt under the provisions of FOIA."[18]

Defendant maintains that the entirety of the other two documents must be withheld. One consists of communications between lawyers which "reflect answers and information in response to questions raised by attorneys regarding the Stryker

---

[12]*Id*.

[13]*Id*.

[14]Doc. 12-12.

[15]Declaration of Kristen MH Coyne, doc. 17-3 at ¶ 10. a.

[16]*Id*.

[17]Doc. 17-3 at ¶ 10. b.

[18]*Id*.

vehicle."[19] The second being withheld in its entirety is a printout regarding information "requested 12 May 2015 by Chief, Legal Assistance Office to the ASARAK Attorney Adviser, and clearly marked 'For Official Use Only: Litigation/Attorney Work Product.' This record is a memorandum of the observations of the Attorney at the March 24, 2018 observation at the accident scene."[20] The reason given for withholding these two documents is that they qualify for protection as attorney-client communications and as part of "pre-decisional materials written as part of the decision making process of the agency Army."[21]

Defendant also prepared a "Vaughn index." The index appears in the record at docket 17-5.

### III. STANDARD OF REVIEW

Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[22] The materiality requirement ensures that "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."[23] Ultimately, "summary judgment will not lie if the . . . evidence is such that a reasonable jury could return a verdict for the nonmoving party."[24] However, summary judgment is mandated "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that

---

[19] Doc. 17-3 at ¶ 10. d.

[20] *Id.*

[21] *Id.*

[22] Fed. R. Civ. P. 56(a).

[23] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

[24] *Id.*

party will bear the burden of proof at trial."[25]  Because facts in FOIA cases are rarely in dispute, "[m]ost FOIA cases are resolved by the district court on summary judgment."[26]

## IV.  DISCUSSION

**A.  Principles of FOIA Case Law**

FOIA requires public access to government information to further an open and well functioning democracy, especially where access might be "needed to check against corruption and to hold the governors accountable to the governed."[27]  "The statute provides public access to official information 'shielded unnecessarily' from public view and establishes a 'judicially enforceable public right to secure such information from possibly unwilling official hands.'"[28]  FOIA mandates full agency disclosure unless information is exempted under one of FOIA's nine statutory exemptions.  Because FOIA's purpose is to encourage disclosure, its exemptions are narrowly construed.[29]

An agency bears the burden of justifying application of FOIA exemptions.[30]  Reasonably detailed, non-conclusory affidavits meet this burden.  Affidavits must include a '*Vaughn* index' "identifying the documents withheld, the FOIA exemptions claimed, and a particularized explanation of why each document falls within the claimed exemption."[31]  The particularized explanation should disclose "as much information as

---

[25]*Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

[26]*Animal Legal Defense Fund v. FDA*, 836 F.3d 987, 989 (9th Cir. 2016).

[27]*John Doe Agency v. John Doe Corp.,* 493 U.S. 146,152 (1989) (quoting *NLRB v. Robbins Tire & Rubber Co.,* 437 U.S. 214, 242 (1978).

[28]*Lahr v. Nat'l Transp. Safety Bd*., 569 F.3d 964, 973 (9th Cir. 2009) (quoting *Dept. of Air Force v. Rose*, 425 U.S. 352,361 (1976).

[29]*Dep't of Justice v. Julian,* 486 U.S. 1, 8 (1988).

[30]5 U.S.C. § 552(a)(4)(B).

[31]*Lion Raisins Inc. v. Dep't of Agriculture*, 354 F.3d 1072, 1082 (9th Cir. 2004) (*overruled on other grounds by Animal Legal Defense Fund, supra,* n. 26.)

possible without thwarting the claimed exemption's purpose."[32] If there are particularized explanations, "substantial weight [should be given] to an agency's declarations regarding the application of a FOIA exemption."[33] "If, however, the court finds the affidavits or testimony submitted too generalized to establish eligibility for an exemption, it may, in its discretion, proceed to examine the disputed documents in camera for a first-hand determination of their exempt status."[34]

Defendant invoked 5 U.S.C. § 552(b)(6), the "personal privacy" exemption, to support redaction of the names and other personal identifying information of personnel who gave sworn statements or worked on investigative, maintenance, or inspection reports. Personal privacy is implicated if the request affects "the individual's control of information concerning his or her person, or constitutes a 'public intrusion' long deemed impermissible under the common law and in our cultural traditions. Disclosures that would subject individuals to possible embarrassment, harassment, or the risk of mistreatment constitute nontrivial intrusions into privacy."[35] The government carries the burden of proving a non-trivial privacy interest.

Defendant redacted or did not produce some documents relying on the "deliberative process" exemption found in 5 U.S.C. § 552(b)(5). The "deliberative process" exemption permits non-disclosure of "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency."[36] This provision shields "those documents, and

---

[32]*Wiener v. FBI,* 943 F.2d 972, 979 (9th Cir.1991) (quoting *King v. U.S. Dept. of Justice*, 830 F.2d 210, 224 (D.C. Cir. 1987)).

[33]*Shannahan v. IRS*, 672 F.3d 1142, 1148 (9th Cir. 2012).

[34]*Church of Scientology of Calif, v. U.S. Dep't of Army*, 611 F.2d 738, 742 (9th Cir. 1979), *overruled on other grounds* by *Animal Legal Def. Fund, supra,* n. 26.

[35]*Cameranesi v. U. S. Dept. of Defense*, 856 F.3d 626, 638 (9th Cir. 2017) (internal quotations and citations omitted).

[36]5 U.S.C. § 552(b)(5).

only those documents, normally privileged in the civil discovery context."[37]  "A predecisional document is a part of the 'deliberative process', if the disclosure of the materials would expose an agency's decision making process in such a way as to discourage candid discussion within the agency and thereby undermine the agency's ability to perform its functions."[38]  The government agency must segregate and disclose "any reasonably segregable portion of a record"[39] that is being withheld under a FOIA exemption.

Defendant asserts that Plaintiff's purpose in seeking disclosure is to obtain information relevant to the James Lawsuit and that such a purpose is not appropriate in a FOIA lawsuit.  Two cases principally relied upon by Defendant are readily distinguishable from the situation before this court.  As Plaintiff points out, those cases involved enforcement actions by a federal agency.[40]  Another case relied upon by Defendant involved a FOIA request seeking information that would assist a defendant in a criminal prosecution.  The appellate court wrote:  "We hold that in criminal cases [FOIA] does not extend the scope of discovery permitted under Rule 16."[41]  That case is easily distinguished from the case at bar.  The other cases cited by Defendant are also distinguishable.

The real issue emanating from Plaintiff's purpose in seeking information that relates to the James Lawsuit is whether Plaintiff has provided an adequate basis for

---

[37]*NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 149 (1975).

[38]*Lahr,* 569 F.3d at 979-80 (quoting *Assembly of State of Calif. v. U.S. Dept. Of Commerce*, 968 F.2d 916, 920 (9th Cir. 1992)).

[39]5 U.S.C. § 552(b).

[40]*NLRB v. Robbins Tire & Rubber Co.* 437 U.S. 214, 241-243 (1978); *Shannahan v. IRS*, 672 F.3d 1142, 1149-1151;

[41]*United States v. U.S. Dist. Court*, 717 F.2d 478, 480 (9th Cir. (1983).

seeking the information relating to the actions of the Army personnel involved in the Stryker incident. The Ninth Circuit has explained:

> When a FOIA requester alleges a public interest 'in showing that responsible officials acted negligently or otherwise improperly in the performance of their duties' *Favish*, 541 U.S. at 174, we are guided by the Supreme Court's decisions in *Ray* and *Favish*. In *Ray*, the FOIA requesters argued the identities of the Haitian returnees was necessary for 'ascertaining the veracity of the interview reports.' 502 U.S. at 179. The Court rejected this argument, holding that [w]e generally accord Government records and official conduct a presumption of legitimacy,' and that requesters had presented no evidence to overcome this presumption. *Id*. *Ray* expressly reserved the question of '[w]hat sort of official misconduct might be sufficient to identify a genuine public interest in the disclosure. The Court subsequently answered that question in *Favish*, holding that where 'the public interest being asserted is to show that responsible officials acted negligently or otherwise improperly in the performance of their duties' then 'the requester must establish more than a bare suspicion' in order to overcome the presumption of legitimacy accorded to official conduct.' 541 U.S. at 174. Rather, 'the requester must produce evidence that would warrant a belief by a reasonable person that the alleged Government impropriety might have occurred.' *Id*.[42]

**B. Propriety of Withholding of Documents and Redactions**

The first issue to consider is whether Plaintiff has provided an adequate basis for seeking the requested information given that it relates to the James Lawsuit. The three redacted sworn statements already provided by Defendant show that the Stryker involved in the accident had a compromised brake system due to its inability to maintain adequate air pressure.[43] Defendant provided a redacted copy of the maintenance and inspection worksheet for the February 15, 2015, inspection of the Stryker.[44] After the accident the air brake actuater was replaced on April 28, 2015.[45] On that same date numerous faults and deficiencies not listed on the February maintenance report were

---

[42]*Camarenesi*, 856 F. 3d at 640.

[43]Doc. 12-9.

[44]Doc. 12-10 at p. 21.

[45]*Id*. at pp. 22-23.

-9-

noted.[46] Taken together these facts are enough evidence to warrant a belief that the Stryker was negligently maintained by Army personnel.

The court now turns to the redaction of the names and refusal to provide the current location of the Army personnel who gave the three sworn statements and performed maintenance work and inspections and prepared reports. If the information is provided, Plaintiff's lawyer will attempt to speak to and perhaps depose the individuals. This implies Defendant would constitute harassment and would embarrass, shame and stigmatize the individuals.[47] Speaking to a witness or even taking a witness deposition certainly does not constitute an intrusion "long deemed impermissible under the common law and in our cultural traditions."[48] Of course, providing the names and locations does mean the individuals lose total control of their privacy, but in a context wherein the individuals may have information relating to the death of another individual, the intrusion does not rise to such a level that the names and locations must be kept secret. This is especially so, because the individuals may have information tending to show that the Army is responsible for the death. Defendant suggests that giving information about a wrongful death would embarrass, shame or stigmatize a witness in the circumstances here. A better description of the impact on the individuals is that disclosure would inconvenience them. Defendant also argues that the media would take an interest in the wrongful death lawsuit which could subject the individuals to additional intrusions on their privacy. That argument is entirely speculative. Moreover, in a Federal Tort Claims Act lawsuit, the government, not the individual government employee, would be the named defendant.

Defendant also points out that the level of an employee in an agency hierarchy should be considered. Generally that means that the lower the individual's position, the

---

[46]*Id.* at pp. 22-23.

[47]Doc. 21 at p. 8.

[48]*Church of Scientology, supra* n.34.

-10-

stronger his or her privacy interest. The court agrees that often will be the case. However, in the case at bar, there are no higher level persons who would have the relevant information. The names and current locations of the employees must be produced.

Plaintiff accepts that three of the four sets of documents which Defendant has withheld fall within in the deliberative process exemption, but contends that the email chain among staff members–eight emails dated between 4/29 and 5/4--should be disclosed. Plaintiff argues that Defendant has not provided sufficient information to show that they are part of the deliberative process nor to show that they do not contain segregable information which should be disclosed. Whatever the state of affairs before Defendant agreed to produce segregable information from this email chain, the court now has the benefit of Kristine MH Coyne's declaration.[49] Ms. Coyne avers that the redacted portions "contain the personnel recommendations of USARK staff".[50] This is a particularized explanation. It is entitled to substantial weight.[51] It is enough to persuade the court that the redacted information is part of the deliberative process. The redactions in this email chain are appropriate.

---

[49]Doc. 17-3.

[50]*Id*. at ¶ 10.a.

[51]*Shannahan*, 672 F.3d at 1148.

## V. CONCLUSION

For the reasons above, the motion at docket 12 is granted in part and denied in part and the motion at docket 17 is granted in part and denied in part: Defendant shall provide Plaintiff with the names and current location of those persons whose identifying information was redacted; Defendant is not required to provide any additional documents to Plaintiff.

DATED: October 10, 2018.

/s/ JOHN W. SEDWICK
SENIOR JUDGE, UNITED STATES DISTRICT COURT